**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

EDWARD LENART,

       Plaintiff,

       v.

CITY OF WILDWOOD and
JAMES A. STEVENS, JR.,

       Defendants.

Civil No. 16-4296 (RMB/JS)

**OPINION**

APPEARANCES:

STOPPER LOPEZ, LLC
By:  William Stopper, Esq.
1763 East Marlton Pike, Suite 350
Cherry Hill, New Jersey 08003
       *Attorneys for Plaintiff*

BIRCHMEIER & POWELL LLC
By:  James R. Birchmeier, Esq.
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
       *Attorneys for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

In this suit pursuant to 42 U.S.C. § 1983, Plaintiff Edward Lenart asserts that Defendant City of Wildwood police officer, Defendant James A. Stevens, Jr., violated his federal constitutional rights when Stevens attempted to serve a temporary restraining order on Lenart, and shortly thereafter

1

arrested Lenart for violating the restraining order.[1]  Lenart was

also charged with, and later convicted of, resisting arrest.

Defendants move for summary judgment.  For the reasons

stated herein, the motion will be granted in part and denied in

part.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In the evening of July 14, 2014, Defendant City of Wildwood

Police Officer Stevens, and an unidentified police officer in

training, responded to Plaintiff Lenart's home, dispatched to

serve Lenart with a temporary restraining order granted to the

woman living with Lenart, Patricia Smith. (Defs' Ex. B)[3]  Stevens

testified that the Wildwood Police had had "several" other

"contacts" with Lenart and Smith "regarding domestic disputes

and domestic violence" (Stevens Dep. p. 34), however, Lenart

_____

[1]  The Court exercises federal question subject matter
jurisdiction pursuant to 28 U.S.C. § 1331.

[2]  The Court has considered Defendants' moving papers and
brief at Docket Entry 14, and Plaintiff's opposition papers and
brief at Docket Entry 17.  Defendants have not filed any reply
papers.  See L. Civ. R. 7.1(d)(3) ("If the moving party chooses
to file papers in reply, those papers . . . must be filed with
the clerk at least seven days prior to the motion day.").

[3]  Both Lenart and Smith testified that their relationship
at the time was that of landlord / tenant, with Lenart renting a
room, pursuant to a written one-year lease, in a house in which
Smith lived and owned. (Lenart Dep. p. 11, 25-26; Trial
Transcript, p. 49)  Lenart testified, however, that in the past,
he and Smith had a "dating relationship."  (Lenart Dep. p. 28)

testified that the Wildwood Police had never been called to the Smith / Lenart residence before. (Lenart Dep. p. 30)

Lenart's, Stevens' and Smith's versions of events are largely consistent as to how the encounter began. Stevens and the officer in training were let into the residence by Smith. (Lenart Dep. p. 38; Stevens Dep. p. 39; Smith Trial Testimony[4], p. 50) It is undisputed that there was no disturbance at the time[5]; Lenart was sitting on the couch watching television when the officers entered the room. (Id.)[6] Smith and Stevens testified that Lenart seemed "surprised" to see the police, and

---

[4] It does not appear that Smith was deposed in connection with this suit. The record suggests that she may now reside outside the Court's subpoena power. As will be discussed further infra, in Municipal Court, Lenart was tried and convicted of resisting arrest in connection with the incident at issue in this suit. Smith testified as a witness for the defense in that trial.

[5] Smith apparently sought the TRO based on an "argument" between Lenart and Smith the night before. (Lenart Dep. p. 32, 34, 35)

[6] Stevens also testified, "Q: . . . Did you see any evidence of alcohol, beer, liquor bottles, anything like that sitting around? A: I don't really remember. I think there was. Q: If there was, do you know what kind? A: No. I'm trying to picture Mr. Lenart sitting on the couch. There's a coffee table in front of him and I'm picturing like tall cans. Q: Tall cans of what? A: Of beer. Q: Do you remember what kind? A: No." (Stevens Dep. p. 44) Stevens also testified that he "smelled alcohol" "coming from" Lenart. (Id. p. 49) Lenart and Smith, however, both testified that Lenart was "sober" / "wasn't drinking" / "wasn't drunk" at the time the police entered the house. (Trial Transcript, p. 40, 52)

Lenart testified that he was "totally shocked." (Stevens Dep. p. 47; Trial Transcript p. 50; Lenart Dep. p. 38)

At this point, the parties' accounts diverge. Lenart and Smith testified that Stevens immediately began "yelling" and "screaming" and ordering Lenart "to get the hell out of here." (Trial Transcript, p. 50; Lenart Dep. p. 38) Stevens testified that he "was calm"; he "wasn't yelling at [Lenart] or anything," but "explained" that Lenart "had to leave" and attempted to obtain Lenart's signature on the TRO. (Stevens Dep. p. 44)

According to Lenart, "[Stevens] was like, this is a restraining order, you got to go. I said, fine, I'm out of here. . . . He said get all your stuff and get out of here. I said, I'm not taking any of my stuff. I have too much of it. I'm leaving." (Lenart Dep. p. 38-39) In contrast, Stevens testified that "[Lenart] kept saying that he lived here, he wasn't gonna leave." (Stevens Dep. p. 44) Stevens further testified, "I threatened to arrest him for not leaving . . . . It took him a little bit, a minute or so. After talking to him and explaining to him that he had to leave he did stand up." (Stevens Dep. p. 47) Lenart then "walked" out of the house and stood on the sidewalk. (Lenart Dep. p. 39, 47; Stevens Dep. p. 48-49, 53) There is no evidence in the record that Lenart ever raised his voice or otherwise reacted violently.

Once outside the house, Stevens testified that Lenart "continued to say that he wasn't leaving" and "kept saying that . . . [he'll] come back once [the police] leave." (Stevens Dep. p. 51) According to Stevens, that's when Stevens "advised" Lenart that he was under arrest "for violating the Restraining Order, refusing to leave," although at this point Stevens testified that Lenart was, indeed, "in front of the house," not inside it. (Stevens Dep. p. 52)

Lenart's testimony about the moments leading up to his arrest is different. Lenart testified that he "never" said he was going to come back to the property, instead he testified that he told Stevens he wanted to speak to his attorney before signing the TRO papers. (Lenart Dep. p. 42-43) As to what happened next, Lenart testified,

> [Stevens] grabbed the papers out of my hands. I said, I'm leaving. And I turned around and I walked up the block. And . . . he was still screaming at me. . . . Look you piece of shit, I told you to sign these papers. And I didn't say anything. I told him I was leaving. I said, there's an order for me to leave the premises, I'm already off the premises, and I'm leaving. And I walked away. . . more than 75 . . . yards. . . . I stopped and turned around and [Stevens] was screaming my name from the sidewalk, yo Lenart, Lenart, Lenart, get your ass back here. . . . I stopped, I turned around . . . I walked all the way back. I got within . . . 18 inches to a foot. . . . [Stevens] lunged at me, grabbed me around the neck and shoulders, threw me to the ground.

(Lenart Dep. p. 42-44) Smith's testimony from the Municipal Court trial corroborates Lenart's testimony; Smith testified

that she watched from the house as Lenart walked down the street and "then the officer called him back." (Trial Transcript, p. 50)

Stevens testified that he and Lenart were standing "face to face" when he "told Mr. Lenart that he was under arrest" and "grabbed his one arm," at which point Lenart

> started to like-- started to pull away from me, tried to pull away and get away, so I just pulled down and tripped him.
> He went down on his stomach and then he continued to squirm and made it hard-- didn't comply and put his hands right behind his back, he was squirming around a little bit.
> And after a brief struggle I forced his hands behind his back and placed him in handcuffs.

(Stevens Dep. p. 53-54)

Lenart denies resisting at all. (Lenart Dep. p. 46-47) Smith also testified that Lenart "did not resist arrest." (Smith Trial Testimony, p. 51) Smith testified, "[Stevens] threw [Lenart] to the ground and beat -- excuse me -- the shit out of him." (Id. at p. 50-51)

Lenart testified that once he was on the ground,

> Officer Stevens . . . tread on my right hand with his foot, like a stomp, came back and dropped on my . . . right knee, then he got up, tread on my left foot, laid back into my back with his . . . knee . . . . grabs my head and starts grinding my face . . . . grabs my right hand and then grabs my left hand and handcuffs me.

(Lenart Dep. p. 44-46)

Once handcuffed, Lenart testified that Stevens "literally threw me in [the backseat of the police car], smashing my forehead against the side of the panel of the car, the roof of the car . . . . He's kicking my feet to get in. . . . [H]e's trying to slam the door on my legs." (Lenart Dep. p. 49)

When Lenart arrived at the police station, he told unidentified officers that he "need[ed] medical attention." (Lenart Dep. p. 55) When he arrived at the County jail, he told the nurse that he "need[ed] medical attention." (Id.) "[A]pproximately a day and a half later," when Lenart was released on bail, Smith took pictures of Lenart's injuries (Trial Transcript, p. 51)[7], and took Lenart to Cape Regional Medical Center's emergency room. (Lenart Dep. p. 57) Lenart testified that his injuries included bruises and abrasions on his face, forehead, cheek, and chin; his right hand, forefinger and thumb were broken, requiring a cast; his right knee "ACL" was torn; and his left foot was in pain. (Lenart Dep. p. 57-59)

Lenart was charged with violation of a restraining order in violation of N.J.S.A. 2C:29-9(b), and resisting arrest in violation of N.J.S.A. 2C:29-2. (Defs' Ex. B) He was only

---

[7] Eleven pictures of Lenart's injuries were introduced into evidence during the Municipal Court trial (Trial Transcript, p. 32-35), however, the pictures are not in the summary judgment record before this Court.

tried, however, on the resisting arrest charge, and was found guilty. (Defs' Ex. F) The Municipal Court imposed a sentence of five days in jail, with "credit for the two days" of time already served. (Trial Transcript, p. 75) Lenart's conviction was affirmed on appeal. (Plaintiff's Response to Defendants' Statement of Material Facts ¶ 10)[8]

The Complaint asserts five counts, all pursuant to § 1983[9]: (1) false arrest in violation of the Fourth Amendment; (2) false imprisonment in violation of the Fourth Amendment; (3) excessive force in violation of the Fourth Amendment; (4) malicious prosecution in violation of the Fourth Amendment; and (5) Monell[10] liability against the City of Wildwood.

Defendants elected not to file a Motion to Dismiss. The instant Motion for Summary Judgment is the first dispositive motion filed in this case.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[8]   The record does not indicate whether Lenart sought habeas corpus review.

[9]   The Complaint does not assert any state law claims.

[10]   Monell v. Department of Social Services, 436 U.S. 658 (1978).

Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law[.]"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corps., 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252. Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995); <u>accord</u> <u>Jackson v. Danberg</u>, 594 F.3d 210, 227 (3d Cir. 2010) (citing <u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

## III. ANALYSIS

### A. The *Heck* Doctrine

The Court first turns to an issue not raised by the parties but which frequently arises in § 1983 cases challenging an allegedly unconstitutional arrest, imprisonment or conviction.

In Heck v. Humphrey, the Supreme Court held,

> in order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized
> to make such determination, or called into question by
> a federal court's issuance of a writ of habeas corpus,
> 28 U.S.C. § 2254. A claim for damages bearing that
> relationship to a conviction or sentence that has not
> been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486–87 (1994). Lest there be any doubt that Heck is implicated by the facts of this case, Heck provided the following hypothetical:

> An example of . . . a § 1983 action that does not seek
> damages directly attributable to conviction or
> confinement but whose successful prosecution would
> necessarily imply that the plaintiff's criminal
> conviction was wrongful [] would be the following: A
> state defendant is convicted of and sentenced for the
> crime of resisting arrest, defined as intentionally
> preventing a peace officer from effecting a lawful
> arrest[11]. . . . He then brings a § 1983 action against

---

[11] The Court notes that New Jersey's resisting arrest statute might materially differ insofar as it provides that "a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest . . . . It is not a defense to a prosecution under this subsection that the law enforcement officer was

the arresting officer, seeking damages for violation of
his Fourth Amendment right to be free from unreasonable
seizures.  In order to prevail in this § 1983 action, he
would have to negate an element of the offense of which
he has been convicted. . . . [T]he § 1983 action will
not lie.

Heck, 512 U.S. at 499 n.6.

Confoundingly, Defendants have not raised the Heck issue in

either their Answer or the instant Motion for Summary Judgment.[12]

Thus, assuming without deciding that Heck would bar one or more

of Lenart's claims, Defendants' failure to timely raise it in

their answer may preclude Defendants' from ever raising it in

this litigation.  See Fed. R. Civ. P. 8(c)(1) ("In responding to

a pleading, a party must affirmatively state any avoidance or

affirmative defense, including . . . estoppel, . . . res

_____

acting unlawfully in making the arrest, provided he was acting
under color of his official authority and provided the law
enforcement officer announces his intention to arrest prior to
the resistance." N.J.S.A. § 2C:29-2.  The Court, however, does
not reach this issue, nor the related issue of whether, as a
factual matter, this was the law applied to Lenart's case in
Municipal Court.  See Trial Transcript, p. 59-60 ("THE COURT: .
. . before the court today is a charge from July 4th [sic] of
2014, alleging a violation of 2C:29-2(a) providing, purposely
preventing a law enforcement officer from effectuating a lawful
arrest. . . . 2C:29-2(a)(1) provides as follows . . . a person
is guilty of a disorderly persons offense if he purposely
prevents or attempts to prevent a law enforcement officer from
effecting a lawful arrest.").

[12] Neither Heck, nor the volumes of caselaw applying its
holding, are cited in Defendants' moving brief; and as noted
supra, Defendants elected not to file a reply brief.  Similarly,
Defendants make no argument for dismissal based on collateral
estoppel / issue preclusion.

judicata, [etc.].)[13]  In any event, Defendants have not raised it

in the instant motion for summary judgment, and so the Court

will proceed to the merits of Lenart's claims.  See Bolick v.

Sacavage, 617 F. App'x 175, 177 (3d Cir. 2015) (characterizing

the Heck defense as "non-jurisdictional"); Reaves v.

Pennsylvania Bd. of Prob. & Parole, 580 F. App'x 49, 54 (3d Cir.

2014) ("We need not reach the operation of Heck, which is not a

jurisdictional rule and may be bypassed.").[14]

## B. Qualified Immunity of Officer Stevens

Defendant Stevens moves for summary judgment asserting that

he is entitled to qualified immunity.  "[Q]ualified immunity

protects government officials from liability for civil damages

insofar as their conduct does not violate clearly established .

. . constitutional rights of which a reasonable person would

---

[13]  At least one Court of Appeals has held that the Heck bar
is an affirmative defense that may be waived by failure to
timely raise it.  See Kramer v. Vill. of N. Fond du Lac, 384
F.3d 856, 863 (7th Cir. 2004) (citing Carr v. O'Leary, 167 F.3d
1124, 1126 (7th Cir. 1999)); see also, Cummings v. City of
Akron, 418 F.3d 676, 681 n.3 (6th Cir. 2005) (noting, but not
deciding, the issue).

[14]  While the Court "may," in appropriate circumstances,
pursuant to Fed. R. Civ. P. 56(f)(2), "after giving notice and a
reasonable time to respond," grant summary judgment "on grounds
not raised by a party," the Court declines to do so in this
case.  See generally, Oahn Nguyen Chung v. StudentCity.com,
Inc., 854 F.3d 97, 103 (1st Cir. 2017) ("While a district court
may in rare circumstances enter summary judgment on a ground not
raised by any party, see Fed. R. Civ. P. 56(f)(2), that power
should be exercised sparingly and with great circumspection.").

have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)
(internal citation and quotation omitted).  The qualified
immunity analysis first considers whether there was a
constitutional violation and, if so, whether the right violated
was clearly established at the time of the misconduct.  <u>Id.</u> at
232.  "A right is clearly established only if its contours are
sufficiently clear that 'a reasonable official would understand
that what he is doing violates that right.'" <u>Carroll v. Carman</u>,
135 S.Ct. 348, 350 (2014) (quoting <u>Andersen v. Creighton</u>, 483
U.S. 635, 640 (1987)).

(1)  <u>False Arrest / False Imprisonment</u>

Fourth Amendment claims for false arrest and false
imprisonment require the plaintiff to prove the arrest was made
without probable cause.  <u>Berry v. Kabacinski</u>, 704 F. App'x 71,
73 (3d Cir. 2017) (citing <u>Groman v. Twp. of Manalapan</u>, 47 F.3d
628, 634, 636 (3d Cir. 1995)).  Lenart was arrested and charged
with two different crimes: violation of a restraining order in
violation of N.J.S.A. 2C:29-9(b), and resisting arrest in
violation of N.J.S.A. 2C:29-2.  The Court addresses each charge
in turn.

N.J.S.A. 2C:29-9(b) provides, "a person is guilty of a
crime of the fourth degree if that person purposely or knowingly
violates any provision in an order entered under the provisions
of the Prevention of Domestic Violence Act of 1991."  Viewing

the record evidence in the light most favorable to Lenart, a jury could find that Stevens lacked probable cause to believe that Lenart had violated the TRO. According to Lenart's version of events, he left the house when he was told that the TRO required him to leave, and he was walking down the block away from the property when Stevens ordered him to return.[15] Stevens also admits that Lenart did, indeed, leave the house.

Likewise, viewing the facts in the light most favorable to Lenart, a jury could find that Stevens lacked probable cause to believe that Lenart resisted arrest. Lenart's testimony, and Smith's testimony, is unequivocal: Lenart obeyed Stevens' order to return to the property, and then he did not "resist in any way whatsoever" as Stevens allegedly beat Lenart. (Lenart Dep. p. 46-47) Smith testified that Lenart "did not resist arrest." (Trial Transcript, p. 51)

On the other hand, Stevens' testimony materially differs as to the facts supporting both charges. If a jury believes Stevens' testimony, the jury could reasonably find that Lenart did not immediately leave the house and refused to leave the house (before eventually leaving the house), thereby supplying

---

[15] As Stevens admitted at his deposition, Stevens' belief that Lenart intended to violate the TRO at some time in the future is not a proper basis for arrest, and was not the basis for Lenart's arrest. (Stevens Dep. p. 68-69) Stevens also admitted that refusing to sign the TRO is not a crime. (Stevens Dep. p. 46)

probable cause to believe that Lenart violated the TRO.  A jury

could also believe Stevens' testimony that Lenart pulled away

from him and squirmed on the ground, thereby preventing Stevens

from handcuffing Lenart, and supplying probable cause to believe

that Lenart resisted arrest.

Obviously, issues of disputed material fact exist as to

whether Lenart's arrest and detention were constitutionally

permissible.  Accordingly, summary judgment will be denied as to

the constitutional issue.

As to qualified immunity, "unresolved disputes of

historical fact relevant to the immunity analysis" exist.

Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002); see also,

Reitz v. County of Bucks, 125 F.3d 139, 147 (3d Cir. 1997).  The

Court will use special jury interrogatories to guide the Court

in its ultimate determination of Stevens' qualified immunity

defense.  See Curley, 298 F.3d at 279.  In the event the jury's

answers establish that Lenart refused to leave the house and/or[16]

---

[16]  See Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007)
("there need not have been probable cause supporting charges for
every offense which an officer arrested a plaintiff for the
arresting officer to defeat a claim of false arrest.  The
rationale for the rule is that 'the existence of probable cause
for one offense . . . justifies the arrest -- and defeats the
plaintiff's claim for false arrest-- even if there was
insufficient cause to arrest on the second offense alone.'")
(citing Wright v. City of Philadelphia, 409 F.3d 595 (3d Cir.
2005) and quoting Edwards v. City of Philadelphia, 860 F.2d 568,
576 (3d Cir. 1988)).

physically resisted Stevens' attempts to handcuff him, Stevens will be entitled to qualified immunity.

(2) Excessive Force

The Fourth Amendment permits the use of "reasonable" force. Graham v. Connor, 490 U.S. 386, 396 (1989). "[E]ach case alleging excessive force must be evaluated under the totality of the circumstances." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

The extent of the resulting injuries from the force used is one of many factors that must be considered in evaluating reasonableness. See id. In this case, Lenart's injuries appear to be relatively severe. Even under Stevens' account of Lenart's alleged resistance, a reasonable jury could find that the force used on Lenart exceeded what was necessary to stop Lenart from "pulling away" and "squirming" once he was on the ground.

Moreover, the jury will also be asked to consider:

• the severity of the crime at issue;

• whether Plaintiff posed an immediate threat to the safety of Defendants or others;

• the possibility that Plaintiff was armed;

• the possibility that other persons subject to the police action were violent or dangerous;

• whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

- the duration of Defendants' action; [and]

- the number of persons with whom Defendants had to contend.

Third Circuit Model Jury Instruction 4.9 for Section 1983 Excessive Force Claims (March 2017) (citing Graham, 490 U.S. at 396; Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004)).

Almost all of these factors favor Lenart, at least at summary judgment. Nothing in the record before the Court suggests that Lenart was behaving violently during the interaction, nor is there any suggestion that Lenart was armed, nor that Stevens had reason to suspect that Lenart was armed. Thus, the record evidence raises sufficient issues of material fact as to the reasonableness of the seizure at issue to support submitting the excessive force claim to the jury.

Additionally, the Court holds that Stevens is not entitled to qualified immunity at summary judgment. The Third Circuit has explained,

> [i]n the context of excessive force claims, we have relied on the factors set forth in Graham and Sharrar in evaluating whether an officer made a reasonable mistake. We have stated that these factors are well-recognized, and that when an officer applies them in an unreasonable manner, he is not entitled to qualified immunity.

Green v. New Jersey State Police, 246 F. App'x 158, 162-63 (3d Cir. 2007). Disputes of historical material fact exist as to

whether Lenart was actively resisting arrest, and even if he
was, whether Stevens' use of force was, nonetheless, excessive
relative to the amount of resistance.  Thus, the Court will
resolve the issue of qualified immunity by way of special
interrogatories to the jury, and, if necessary, Defendant
Stevens' may make an appropriate motion at the appropriate time.

Stevens' Motion for Summary Judgment on the excessive force
claim will be denied.

(3)  Malicious Prosecution

"To prove malicious prosecution under § 1983, a plaintiff
must show that: (1) the defendants initiated a criminal
proceeding; (2) the criminal proceeding ended in plaintiff's
favor; (3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for a purpose other than
bringing the plaintiff to justice; and (5) the plaintiff
suffered deprivation of liberty consistent with the concept of
seizure as a consequence of a legal proceeding."  Kossler v.
Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc).

The undisputed record evidence demonstrates that the
criminal proceeding resulting in Lenart's conviction for
resisting arrest did not end in Lenart's favor.  Therefore, as a
matter of law, there has been no constitutional violation of
Lenart's Fourth Amendment right to be free from malicious

prosecution.  Accordingly, Stevens' Motion for Summary Judgment as to the malicious prosecution claim will be granted.

(4)  <u>Punitive Damages</u>

In cursory fashion, Stevens asserts that "a reasonable jury could not find that [] Stevens acted with reckless or callous indifference to [Lenart's] rights." (Moving Brief, p. 15)  <u>See Smith v. Wade</u>, 461 U.S. 30, 56 (1983) (punitive damages are appropriate in § 1983 actions when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").  At summary judgment, viewing the record in the light most favorable to Lenart, the Court cannot rule out the possibility of punitive damages.  Particularly if a jury finds that Stevens used unreasonable and excessive force, punitive damages may be appropriate.  Stevens' Motion for Summary Judgment as to punitive damages will be denied.

**C. <u>Monell Liability of Defendant City of Wildwood</u>**

In his opposition brief, Lenart explains his theory of liability:

> Wildwood's failure to train its officers with respect to the service of TROs, especially where the defendant declines to sign the TRO document; and tacitly approving the use of excessive force as a result of Defendant Wildwood's inadequate training and supervision of its police officers with regard to the use of force against member of the public amount[s] to deliberate indifference to the rights and safety of the Plaintiff.

(Opposition Brief, p. 11)

    (1)  <u>Failure to Train-- Service of TROs</u>

Lenart contends that his arrest could have been avoided altogether if Stevens had been properly trained. According to Lenart, "Stevens was arguing with [Lenart] outside of the subject premises and demanding [Lenart's] signature *after* [Lenart] had already complied with the TRO [but had not signed it], causing Stevens to become uncertain and aggravated," (Opposition Brief, p. 14), which, Lenart contends led Stevens to arrest Lenart "out of anger" and a mistaken belief that Stevens was required to obtain Lenart's signature on the TRO. (Id., p. 18)

The only evidence supporting this claim is Stevens' deposition testimony[17] which reads, in relevant part:

> Q: . . . Is there a Wildwood Police Department policy about getting signatures on TROs?
>
> A: I'm not sure if there is.
>
> . . . .
>
> Q: . . . [Y]ou were trained on serving these TROs when you were coming up through your training?
>
> A: Yes. You know, we have always been trained; explain it to them, give them a little bit of time to get some belongings . . . have them sign it, give them their copy. . . .

---

[17] The entire summary judgment record consists of: (a) the police report documenting Lenart's arrest; (b) Stevens' "Use of Force Report"; (c) Lenart's deposition; (d) Stevens' deposition; and (e) the Municipal Court trial transcript.

Q:  . . . [W]hat was the procedure if someone refuses
to sign?

A:  I guess as long as they have it, I mean -- I never
had that happen to me before where nobody signed.

. . . .

Q:  At that time did you believe it was required by
you to get him to sign?

A:  Yes.

Q:  Did you believe it to be an arrestable offense if
he didn't sign?

A:  No.  I guess you can't make somebody sign a piece
of paper.

(Stevens Dep. p. 45-46)

Stevens' testimony does not support liability under the
"pattern" theory of failure to train.  "[W]hen city policymakers
are on actual or constructive notice that a particular omission
in their training program causes city employees to violate
citizens' constitutional rights, the city may be deemed
deliberately indifferent if the policymakers choose to retain
that program."  Connick v. Thompson, 563 U.S. 51, 61 (2011).
Most often, this requires "[a] pattern of similar constitutional
violations by untrained employees."  Id. at 62.  Stevens'
deposition testimony does nothing to establish a pattern of
violations.  By definition, a pattern requires evidence of more
than one incident.  Such evidence is completely absent from the
record.

Additionally, this does not appear to be a case falling into the "narrow range of circumstances," Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 409 (1997), where a single constitutional violation amounts to deliberate indifference. Nothing in the record supports a finding that "the need for more or different training" concerning obtaining signatures on TROs "is so obvious, and the inadequacy so likely to result in" arrests for simply refusing to sign, "that the policymakers of [Wildwood] can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989).

Accordingly, summary judgment will be granted to the City of Wildwood as to Lenart's Monell claim premised on his false arrest / false imprisonment claim.[18]

(2)  Failure to Train -- Use of Force

Lenart asserts in conclusory fashion,

Defendant Wildwood has tacitly approved the use of excessive force as a result of Defendant Wildwood's inadequate training and supervision of its police officers with regard to the use of force against members of the public, amounting to deliberate indifference to

_____

[18]  It is not clear whether this first Monell claim is also based upon the malicious prosecution claim.  In any event, the Court has already held that there was no constitutional violation as to that claim, therefore there can be no Monell liability either.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (municipal liability cannot attach under § 1983 where the government actor did not violate the plaintiff's constitutional rights).

the rights and safety of the Plaintiff. The failure to train is closely and directly related to Plaintiff's ultimate injuries, and caused the cited constitutional violations.

(Opposition Brief, p. 14) Lenart cites no evidence to support this generic argument.[19] Accordingly, summary judgment will be granted to the City of Wildwood as to Lenart's <u>Monell</u> claim premised on his excess force claim.

(3) <u>Punitive Damages</u>

Although the Court's decision on liability moots Wildwood's argument that Lenart cannot recover punitive damages against it, the Court alternatively holds that the City of Wildwood is entitled to summary judgment on the punitive damages claim. <u>City of Newport v. Fact Concerts, Inc.</u> "hold[s] that a municipality is immune from punitive damages under 42 U.S.C. § 1983." 453 U.S. 247, 271 (1981); <u>see also</u> <u>Smith v. Borough of Dunmore</u>, 633 F.3d 176, 183 (3d Cir. 2011) ("'a municipality is immune from punitive damages under 42 U.S.C. § 1983[.]'") (quoting <u>City of Newport</u>).

---

[19] In the fact section of Lenart's brief, Lenart selectively cites to portions of Stevens' deposition, perhaps to suggest that Stevens has been disciplined and sued for misconduct on the job. A complete reading of the relevant deposition excerpts, however, reveals that while Stevens has been sued three times for on-duty conduct, there has never been a finding of misconduct or liability against Stevens (Stevens Dep. p. 22-25), and he has never been disciplined for "any type of use of force." (Id. at p. 21).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted, in part, and denied, in part, and this case shall be set down for trial.  As discussed, the record presents two sides to this story which the jury will be called upon to evaluate.  The jury will be required to answer the questions that remain in dispute, as set forth supra.  The Court hastens to note-- for the benefit of the parties-- that while Lenart has "won the battle" at summary judgment, he may well "lose the war" at trial where, surely, witness credibility will be a key factor.  In this regard, the Court notes that the Municipal Court Judge "did not find credible" Lenart's "testimony . . . as to the events of the evening" at issue. (Trial Transcript, p. 64).  The issue of witness credibility was not before this Court.  An appropriate Order shall issue on this date.

                                        s/ Renée Marie Bumb
Dated: April 27, 2018                   _____
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE